O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| ELAINE KESSLER,<br>        Plaintiff,<br><br>vs.<br><br>CHIPOLTE MEXICAN GRILL, INC., ET AL.,<br>        Defendants. | Case No.: SACV 14-0405-DOC (JPRx)<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [33] |

Before the Court is Defendant Chipotle Mexican Grill, Inc., Chipotle Mexican Grill Service Co., LLC, and Chipotles Services, LLC's (together, "Chipotle" or "Defendants") Motion for Partial Summary Judgment ("Motion") (Dkt. 33). Oral arguments were heard on March 2, 2015. After considering the parties' respective arguments, the Court hereby GRANTS Defendants' Motion.

## I.     BACKGROUND

Plaintiff, Elaine KESSLER, alleges that while employed by Chipotle as a Kitchen Manager she was sexually harassed by a General Manager. Later, she claims that a separate General Manager terminated her in retaliation for reporting the harassment. Chipotle now moves for summary judgment as to four of Plaintiff's claims: (1) retaliation pursuant to Section 12940(h) of the California Fair Employment and Housing Act ("FEHA"); (2) employment discrimination in violation of public policy pursuant to FEHA Section 1290; (3) failure to prevent sexual harassment pursuant to FEHA Section 1240(k); and (4) punitive damages. Chipotle maintains that Plaintiff has no evidence to show that there is a causal connection between her allegation of sexual harassment against one General Manager and her firing by a

separate General Manger. Chipotle also argues that Chipotle took reasonable steps to prevent harassment pursuant to its "robust policies and procedures" to prevent and address reports of sexual harassment. Finally, Chipotle argues that KESSLER's punitive damages claims fail as she has not specified any officer, directors, or managing agents of Chipotle upon whose conduct the claims are based. Mot. at 1.

**A.    Facts**

Chipotle is a chain of "fast casual restaurants" with over 1,500 restaurants and 45,000 employees. Decl. of Perla Lara ("Lara Decl.") ¶¶ 2-3. Chipotle offers tacos, burritos, or salads prepared along a service line. Lara Dec. ¶ 2. At each restaurant, the General Manager/ Restauranteur is responsible for the operations and personnel decisions at a specific location. Lara Decl. ¶ 11. General Managers are expected to enforce Chipotle's policies and procedures. Lara Decl. ¶ 11. The General Managers, however, do not have the authority to change those procedures. Lara Decl. ¶ 11. Each restaurant is also typically staffed with one Apprentice, one or two Service Managers, and one or two Kitchen Managers. *Id.* ¶ 13. Each Chipotle restaurant is staffed with approximately 15-30 crew members. Lara Decl. ¶ 15. The Crew is responsible for various tasks in the restaurant.

Plaintiff was hired by General Manager Terrence Smith as a crew member at Chipotle's Lake Forest Restaurant in August 2011. SUF 1. She began work there on August 4, 2011. SUF 2. She was later promoted to Kitchen Manager.

On February 21, 2013, Restauranteur/General Manager Alejandro Campos called Apprentice Team Leader Perla Lara to report that he had caught Ms. KESSLER and crew-member Alejandro Perez, one of her subordinates, with their pants down in a car in the Chipotle parking lot while Plaintiff was on a paid break. SUF 4. A few hours later, Ms. KESSLER called Ms. Lara and reported that she had been sexually harassed by Mr. Campos. The two arranged to meet at another nearby Chipotle location the next morning to discuss the allegations. SUF 6. They met on February 22, as planned. SUF 7. During the meeting, Ms. KESSLER described instances of sexual harassment by Mr. Campos going back to October 2011. Lara Decl. ¶ 47.

1  This was the first time she formally reported any sexual harassment. KESSLER Depo. 105:1-4.
2  After this point, Ms. KESSLER never worked with Mr. Campos again. Lara Decl ¶ 48.
3        At the February 22 meeting, Ms. KESSLER told Ms. Lara that she would like to transfer
4  restaurants because she no longer wanted to work with Mr. Campos out of fear of retaliation.
5  Ms. Lara gave Ms. KESSLER the option of several nearby restaurants to transfer to, and she
6  chose the Mission Viejo location.
7        Ms. Lara began investigating Ms. KESSLER's allegations directly after their February
8  22nd meeting. On the same day, she went to the Lake Forest restaurant to interview employees
9  who worked there with Ms. KESSLER and Mr. Campos. Lara Decl. ¶ 57. None indicated
10  knowledge of untoward sexual behavior, but one disclosed having observed what she believed
11  to be consensual sexual activity between the two. Lara Decl. ¶¶ 50-53. When approached that
12  day about the incident, Mr. Campos immediately disclosed the fact that the two had engaged in
13  a brief sexual relationship. Lara Decl. ¶ 54. Mr. Campos was suspended, and subsequently
14  terminated on February 26, 2014 for violating company policy. Lara Decl. ¶ 55. Ms. Lara never
15  spoke to Mr. Perez during the course of her investigation of Ms. KESSLER's complaint against
16  Mr. Campos. Lara Depo. at 38:6-22. However, Mr. Perez later testified that he never had a
17  sexual encounter with Ms. KESSLER. Perez Depo. at 63. As a result of her investigation, Ms.
18  Lara concluded that Ms. KESSLER had received favorable reviews as a result of her
19  relationship with Mr. Campos. Lara Depo. at 35:2.
20        Ms. KESSLER began working as a Kitchen Manager at the Mission Viejo location on
21  February 23, 2013, the day after she met with Ms. Lara. SUF 8. Alejandro Arriaga was the
22  General Manager and Karla Ayala was the Apprentice at the Mission Viejo restaurant at the
23  time. SUF 9. Mr. Arriaga quit, and Ms. Ayala was then promoted to General Manager of
24  Mission Viejo. Ayala Decl. ¶ 7. After that, Adrian Montano transferred to Mission Viejo and
25  began working as Apprentice there. Montano Depo. at 10:23-11:5.
26        Ms. Ayala was under the impression that Ms. KESSLER had been transferred consistent
27  with Chipotle's model of having two Kitchen Managers at each restaurant. SUF 10. Chipotle
28  maintains that Ms. Ayala was unaware of Ms. KESSLER's allegations of sexual harassment

against Mr. Campos at the time of that transfer, nor that the transfer was connected to the accusation of sexual harassment. Ayala Decl. ¶ 12. Mr. Montano was transferred after Ms. KESSLER began at the Mission Viejo location, and reports that he was not aware that Ms. KESSLER had accused Mr. Campos of sexual harassment or that this report was connected to Mr. Campos's termination. Montana Depo 10:23-11:5. Neither Mr. Montana nor Ms. Ayala were friends with Mr. Campos. SUF 14-15, 21-22, Montano Depo. at 19:22-20:8, Ayala Decl. ¶ 32.

On March 12, 2013, Ms. KESSLER failed to attend a Respectful Workplace Training Class, leading to a March 19, 2013 Performance Discussion with Ms. Lara. SUF 24. According to Ms. KESSLER, she believed that she was excused from attending the meeting. KESSLER Depo. at 138:9-140-4. In April and May of 2013, Ms. KESSLER was given a number of Performance Discussions and negative comments on her performance review. On April 14, 2013, Plaintiff was given a Performance Discussion for failing to complete her preparatory task and to return from break by the 6 p.m. dinner rush (according to the Discussion, she had been warned twice before about returning on time). SUF 27-28. On May 20, 2013, Ms. KESSLER received a Performance Review dated April 10, 2013. SUF 29. In the Review, Ms. KESSLER was warned about "burning fajitas" and "running out of meat when working the grill," and was criticized for her inability to communicate effectively with her crew. SUF 30-31. She was also warned that she needs to "have a positive attitude," be "willing to take feedback" and "be able to finish task on time and not let the restaurant get dirty." SUF 33.

Chipotle reports that on May 14, 2013, Ms. KESSLER "ran out of rice" leading to wait time for the customers. SUF 35; KESSLER Depo. at 147:14. On May 15, 2013, as a result of the rice incident, Ms. KESSLER received another Performance Discussion and was suspended. SUF 36. Ms. Ayala terminated her employment shortly thereafter. Ayala Decl. ¶ 24.

Ms. Ayala and Mr. Montana maintain that they believed Ms. KESSLER to be a poor performer. Ayala Decl. ¶ 25-28; SUF 25. Ms. KESSLER disputes Chipotle's characterization of her work, and claims that she "worked at a level above expectation and was acknowledged for her performance." Plaintiff's Statement of Genuine Issues ("SGI") (Dkt. 34) 82. For

example, in May 2012 she received a positive performance review, acclaiming her "solid skills" and "positive manner." *Id.* In November 2012, she was commended in her performance review as a "great kitchen manager." *Id.* She also points to coworkers who testify that she was a "good kitchen manager" and "demonstrated solid skills," among other traits. Perez Depo. at 45, Acosta Depo. at 47, James Depo. at 53. Ms. KESSLER also notes that Ms. Lara never heard criticism of Ms. KESSLER's work prior to her reporting the sexual harassment. Lara Depo. at 27. As to the May 14 rice incident, Ms. KESSLER testifies that she was occupied accompanying the health inspector as a result of her supervisors' failure to do so, and pointing out that other employees could have made the rice. KESSLER Depo. at 147-149. She also claims accusations regarding burned fajitas were unfounded, as the pan had not been properly cared for, leaving black specks on all of the food – not just the fajitas prepared by Ms. KESSLER. KESSLER Depo. at 191:16-193:5. She maintains that her firing was in retaliation for reporting sexual harassment.

## II.   LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

1       Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248-49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The court need not "comb the record" looking for other evidence; it is required only to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

**III.   ANALYSIS**

    **A.   Retaliation Claim**

      To establish a prima facie case of retaliation under FEHA, a plaintiff must show (1) that she engaged in a "protected activity," (2) that she was subjected to an adverse employment action, and (3) that there was a causal link between the protected activity and the adverse employment action. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005) (citing *Iwekaogwu v. City of Los Angeles*, 75 Cal App. 4th 803 (1999)). "The causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision." *Morgan v. Regents of University of Cal.*, 88 Cal. App. 4th 52, 69-70 (2000) (quoting *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988)). "Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity." *Id.* (quoting *Cohen v. Fred Meyer, Inc.,* 686 F.2d 793, 796 (9th Cir. 1982). If a plaintiff can establish a prima facie case, the burden is on the defendant to articulate a legitimate, non-retaliatory reason for the

1 employment action. *Yanowitz,* 36 Cal. 4th at 1042. If this burden is satisfied, the presumption
2 of retaliation is negated, and the plaintiff must then prove intentional retaliation. *Id*.

3      Chipotle maintains that Ms. KESSLER's retaliation claim fails for two independent
4 reasons. First, because Ms. KESSLER cannot establish a causal connection between her
5 termination and her sexual harassment complaint. Second, because Chipotle has articulated a
6 legitimate, non-retaliatory reason for Ms. KESSLER's firing, and she has not met her burden of
7 proving intentional retaliation.

8      Logically, in order to establish a "causal link" between an adverse employment action
9 and a protected activity, Ms. KESSLER must present evidence that the ultimate decision-maker
10 regarding her dismissal had knowledge the protected activity, her report of sexual harassment.
11 Ms. KESSLER reported the alleged harassment to Ms. Lara, the Apprentice Team Leader.
12 Chipotle maintains that it was Ms. Ayala who was responsible for the termination, and that she
13 had no knowledge of the reported harassment. Therefore, Chipotle reasons, there could be no
14 connection between the two actions. Mot. at 18. Further, Chipotle argues, even had Ms. Ayala
15 known of the Ms. KESSLER's report of harassment, she would have had no reason to take an
16 adverse employment action as a result. Neither Ms. Ayala nor Mr. Montana were friends with
17 Mr. Campos, nor did they socialize with him.

18      Ms. KESSLER's maintains that both of her superiors in fact had knowledge of her
19 complaints of sexual harassment. Ms. KESSLER has testified that "everybody knew what
20 happened" between herself and Mr. Campos at the Mission Viejo location. KESSLER Depo.
21 158:5-21. In support of this conclusion she states that when she walked into the Mission Viejo
22 location, people began to speak in Spanish, during which time Ms. KESSLER identified her
23 name and Mr. Campos's name in the same sentence. KESSLER Depo. 162:16-24. Ms.
24 KESSLER notes that the store's General Manager when she began, Mr. Alejandro Arriaga, told
25 her that they knew why she was transferred form the Lake Forest store. KESSLER Depo.
26 163:5-25.

27      Chipotle raises several objections to Ms. KESSLER's testimony. Notably, as to Mr.
28 Arriaga's comment that "they knew why she was transferred to the Lake Forest store"

Defendants argue that the conclusions to be drawn from this statement are speculative and conclusory, in additional to constituting inadmissible hearsay. Mot. to Strike (Dkt. 38) at 6-7. The Court agrees. The statement cannot be offered to establish that Mr. Arriaga (and somehow, by extension, Ms. Ayala and Mr. Montano) knew about the true reason for Ms. KESSLER's departure from the Lake Forest location.

What is left of Ms. KESSLER's evidence is her impression that "everybody knew" of the reason for her transfer, in part because of a conversation in Spanish in which both her and Mr. Campos's names were mentioned. This evidence is highly speculative and circumstantial. Further, the evidence in no way ties the conversation to Ms. Ayala and Mr. Montana. In the face of two affidavits disclaiming any knowledge of Ms. KESSLER's protected acts, her evidence as to Ms. Ayala and Mr. Montana's knowledge of the allegations of sexual harassment and her relationship with Mr. Campos is conclusory. There is insufficient evidence for a reasonable jury to conclude that Ms. Ayala and/or Mr. Montana knew of or found out about the true reason for her transfer. Without such knowledge, these individuals "could not have acted in retaliation" to Ms. KESSLER's report of sexual harassment. *Morgan*, 88 Cal. App. 4th at 74. Plaintiff's counsel also noted in oral argument that Ms. Lara knew of the report and had to approve of the firing. This knowledge does not go to causation, as Ms. Ayala, not Ms. Lara, made the decision to fire Ms. KESSLER. The evidence as to causation essentially amounts to "conclusory allegations," as Chipotle asserts, as it is grounded in Ms. KESSLER's unfounded conclusions about her managers' knowledge. *U.S. ex rel. Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1048 (9th Cir. 2011). Ms. KESSLER has not presented sufficient evidence to establish the "causation" element of her retaliation claim. Chipotle's motion is therefore GRANTED as to this claim.

**B.     Wrongful Termination in Violation of Public Policy**

In order to state a claim for wrongful termination in violation of public policy pursuant to Section 12920 of FEHA, a plaintiff must establish (1) an employer-employee relationship; (2) termination; (3) the termination was a violation of public policy; (4) the termination was a legal cause of Plaintiff's damages; and (5) the nature and extent of the damages. *Holmes v.*

1  *General Dynamics Corp.*, 17 Cal. App. 4th 1418, 1426 n. 8 (1993). "In order to sustain a claim
2  for wrongful discharge in violation of fundamental public policy," a plaintiff must show that
3  the violated public policy is (1) fundamental; (2) beneficial for the public; and (3) embodied in
4  a state or constitutional provision. *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1256
5  (1994). In this case, Ms. KESSLER's wrongful termination claim is derivative of her retaliation
6  claim under section 12940(h) of FEHA and 6310 of the Labor Code. *See Sanders v. Arneson
7  Prods., Inc.*, 91 F.3d 1352, 1354 (9th Cir. 1996) (no wrongful termination claim against
8  employers who have not violated the law). There is no other statutory claim related to her
9  firing. As Ms. KESSLER has failed to raise a genuine dispute of material fact as to her
10 retaliation claim, the wrongful termination claim also fails.

**C.      Reasonable Steps**

Under California law, an employer must "take all reasonable steps necessary to prevent discrimination or harassment from occurring." Cal. Gov't Code § 12940(k). An employer must adhere to two obligations to meet this standard: (1) prompt investigation of discrimination or sexual harassment claim; and (2) establishment and promulgation of antidiscrimination and sexual harassment policies and implementation of effective procedures to handle discrimination and sexual harassment claims. *California Fair Employment & Hous. Comm'n v. Gemini Aluminum Corp.*, 122 Cal. App. 4th 1004, 1024-25 (2004). Chipotle argues that it met both obligations, by promptly investigating Ms. KESSLER's claim, and through its "well-established" policies and procedures. Mot. at 22.

First, Chipotle asserts that it met its obligation under California law by conducting a prompt investigation of Ms. KESSLER's claim. *See Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.*, 103 Cal App. 4th 1021, 1036-37 (2002) ("Prompt investigation of a discrimination claim is a necessary step by which an employer meets its obligation to ensure a discrimination-free work environment.").

Ms. Lara, after learning of the allegations, promptly met with Ms. KESSLER, made arrangements for her transfer, and went to Lake Forest to speak to employees there. Mr. Campos was suspended, and then terminated, for violating company policy as a result of Ms.

Lara's investigation. Ms. KESSLER alleges that Chipotle's investigation was insufficient because she never interviewed Alejandro Perez, despite the fact that Mr. Campos made allegations against Ms. KESSLER that he had caught Ms. KESSLER and Mr. Perez with their pants down. Ms. Lara's failure to question Mr. Perez is insufficient to establish that Chipotle failed to conduct a sufficient investigation. Notably, Ms. Lara was investigating allegations against Mr. Campos, not Ms. KESSLER, which resulted in Mr. Campos's dismissal. Speaking to Mr. Perez was not integral to the finding that Mr. Campos should be terminated.

Chipotle also asserts that it has met all of its obligations under California Law to distribute and educate its employees on its anti-harassment policy, and train its employees on that policy. Mot. at 18-19. It further contends that is has avenues for its employees to report sexual harassment. Plaintiff does not challenge the fact that the Chipotle had sufficient formal policies and procedures in place. It is therefore undisputed that Chipotle's anti-harassment policies and procedures were sufficient.

Under these circumstances, no reasonable jury could find that Chipotle failed to conduct a reasonable investigation and take reasonable steps to prevent retaliation. The Motion is GRANTED as to this claim.

### D. Punitive Damages

Under California law, "[a]n employer shall not be liable for [punitive] damages … based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(b). "With respect to a corporate employer, the advance knowledge and conscious disregard…must be on the part of an officer, director, or managing agent of the corporation." *Id.* Therefore, "a corporate defendant cannot be punished for harassment merely because one of its employees has harassed another employee in the workplace; rather, the focus of the punitive damages inquiry must be on the corporation's institutional responsibility, if any, for that harassment." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 714, 219 P.3d 749, 766 (2009), *as modified* (Feb. 10,

2010). "Managing agent" includes "only those corporate employees who exercise substantial independent authority and judgment in their corporate decision-making so that their decisions ultimately determine corporate policy." *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 566-567 (1999).

Chipotle argues that Ms. KESSLER has failed to identify any Chipotle officer, director, or managing agent who had the requisite knowledge of Ms. KESSLER's allegations to support a claim of punitive damages. Further, it asserts the only employees involved in her allegations, Ms. Lara, Mr. Campos, Ms. Ayala, and Mr. Montano, have never served as an officer, director or managing agent of Chipotle. Ms. Lara, the highest ranking manager with knowledge of Ms. KESSLER's allegations was a Field Leader at Chipotle. Ms. KESSLER argues that because the store managers sometime altered timecards of employees after hours, the Chipotle "policymakers have delegated decision-making to the local restaurants." Opp'n at 8. This argument is unpersuasive. The fact that employers could alter time cards does not rise to the level of "substantial independent authority and judgment in their corporate decision-making so that their decisions ultimately determine corporate policy." *White*, 21 Cal. 4th at 566. As a matter of law, the Court finds that Ms. KESSLER has not alleged any culpability on the part of managing agents of Chipotle. Her punitive damages claim therefore fails. The Motion is GRANTED on this basis.

## IV. DISPOSITION

For the foregoing reasons, the Motion is GRANTED. The Court grants summary judgment in favor of the Defendants as to the claims for retaliation, employment discrimination, failure to prevent discrimination under California Government Code Section 12940(k) and for punitive damages.

DATED: March 3, 2015

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE